IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:19-CV-00073-KDB

JONATHAN ERIC MOORE,

    Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner
of Social Security,

    Defendant.

<u>ORDER</u>

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 10), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Title II benefits.

Having carefully reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court finds that Defendant's decision to deny Plaintiff's Social Security benefits is supported by substantial evidence. Accordingly, the Court will **DENY** Plaintiff's Motion for Summary Judgment; **GRANT** Defendant's Motion for Summary Judgment; and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Jonathan Eric Moore applied for Title II benefits on June 22, 2015 (Tr. 172-78).[2] His application was denied at the initial and reconsideration levels. (Tr. 30, 80-91, 92-103). After

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] Citations to the administrative record filed by the Commissioner are designated as "Tr."

1

conducting a hearing on November 6, 2017, Administrative Law Judge Alice Jordan ("ALJ") denied his application in a decision dated March 7, 2018. (Tr. 30-39). Moore then filed for a review of the ALJ's decision with the Appeals Counsel (AC), which denied review on January 15, 2019. (Tr. 1-8). The ALJ's decision now stands as the final decision of the Commissioner, and Moore has requested judicial review in this Court pursuant to 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration to determine if Moore was disabled[3] during the relevant period.[4] At step one, the ALJ found that Moore had not engaged in substantial gainful activity since May 12, 2015, his alleged onset date. (Tr. 32, Finding 2). At step two, the ALJ found that Moore had the following severe impairments: "affective disorder and schizophrenia and other psychotic disorder." (Tr. 32, Finding 3). The ALJ considered Moore's impairments under the listings in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526 at step three and found that they did not meet or medically equal any listing. (Tr. 33, Finding 4).

---

[3] For the purposes of title II of the Act, "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

[4] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

At step four, the ALJ found that Moore had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [M]aintain concentration, persistence and pace for two-hour periods for simple, routine, repetitive tasks and instructions and frequently interact with the general public with no ongoing, constant relationship with the public.

(Tr. 34, Finding 5). Relying on the vocational expert's (VE) testimony, the ALJ further found that Moore could perform his past relevant work as a delivery route truck driver and stock clerk. (Tr. 38, Finding 6). And finally, the ALJ considered Moore's age, education, work experience, and RFC, and concluded that he could perform other jobs that exist in significant number in the national economy, such as hand packager, kitchen helper, and food service worker. (Tr. 38-39).

### III.     LEGAL STANDARD

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

Moore argues that the ALJ's decision is not supported by substantial evidence based on two assignments of error. First, Moore asserts that the ALJ improperly relied on the VE's testimony when there were apparent conflicts between the jobs proffered by the VE and the plain language of the Dictionary of Occupational Titles (DOT). Second, Moore contends that the AC failed to properly consider new and material evidence from one of Moore's treating physicians.

### A. Substantial evidence supports the ALJ's finding that Moore can perform other work in the national economy.

Moore asserts that the ALJ failed to resolve apparent conflicts between the VE's testimony and the DOT. The ALJ's RFC limited Moore to "simple, routine, repetitive tasks and instructions." (Tr. 34, 73-77). The VE testified that Moore could perform his past relevant work of stock clerk (DOT 299.367-014) and delivery route truck driver (DOT 292.353-010), as well as the requirements of representative occupations such as medium, unskilled SVP2 work as a hand

4

packager (DOT 920.587-018), kitchen helper (DOT 318.687- 010), and food service worker (DOT 319.677-014). These five jobs require either Level 3 or Level 2 reasoning.

At step five, the ALJ has the burden to show, by a preponderance of the evidence, that other work exists in significant numbers in the national economy that claimant can perform. *See Mascio*, 780 F.3d at 635. "The [ALJ] often seeks to meet this burden through the testimony of a VE." *Thomas*, 916 F.3d at 313. However, the ALJ cannot blindly rely on the VE's testimony. The ALJ has a duty to identify and resolve any apparent conflicts between the DOT and the VE's testimony. *Id.* at 313 (citing SSR 00-4P, 2000 WL 1898704 at *2 (Dec. 4, 2000)). Often, the ALJ will ask the VE whether his or her testimony conflicts with the DOT. If the VE answers "yes," the ALJ "must elicit a reasonable explanation for the conflict before relying" on the VE's evidence to support a decision about whether the claimant is disabled. SSR 00-4P, 2000 WL 1898704 at *2. If the VE answers "no," there remains an affirmative duty on behalf of the ALJ to "make an independent identification of apparent conflicts." *Pearson*, 810 F.3d at 210. "This means that the ALJ must recognize and resolve ways in which a VE's testimony 'seems to, but does not necessarily,' conflict with the 'express language' of the DOT—even if the conflict is not 'obvious.'" *Thomas*, 916 F.3d at 313 (quoting *Pearson*, 810 F.3d at 209).

The Fourth Circuit recently held in *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019), that there is no apparent conflict between an RFC that limits a claimant to "simple, routine, repetitive" work and Level 2's notions of "detailed but uninvolved . . . instructions" and tasks with a few variables. *Id.* at 143 n.8 ("In finding no apparent conflict between 'simple, routine, repetitive' and Level 2 reasoning, we join every other circuit to consider the issue."). Thus, no conflict exists between simple, routine, repetitive tasks and instructions and Level 2 reasoning.

Whether there is a conflict between simple, routine, repetitive tasks and instructions and Level 3 reasoning is a closer question. The Fourth Circuit has yet to decide this issue directly. However, other courts in this district have held that no conflict exists between Level 3 reasoning and simple, routine, repetitive tasks. *See, e.g.*, *Martin v. Colvin*, No. 1:14-cv-234, 2015 WL 9094738, at *5 (W.D.N.C. Aug. 23, 2018) ("'There is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work [are] consistent with a DOT reasoning level of either 2 or 3.'") (quoting *Carringer v. Colvin*, No. 2:13-cv-00027, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014)); *Clontz v. Astrue*, No. 2:12-cv-00013, 2013 WL 3899507, at *5 (W.D.N.C. July 29, 2013) ("[T]he recent case law clearly establish[es] that a reasoning level of 3 is consistent with a limitation to simple, unskilled work."); *O'Neill v. Berryhill*, No. 5:16-cv-129, 2017 WL 2469243, at *4 (W.D.N.C. June 7, 2017) (agreeing with *Carringer*, *Clontz*, *Williams*, and *Martin* that there is no conflict between Level 3 reasoning and simple, unskilled work), *aff'd*, 723 Fed. Appx. 240 (4th Cir. 2018) (memorandum); *Williams v. Astrue*, No. 3:11-cv-592, 2012 WL 4756066 (W.D.N.C. Aug. 27, 2012) (citing to courts in the Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits holding that there is no conflict between a job classified at Level 3 reasoning and limitation to simple, routine, unskilled work), *adopted by* 2012 WL 4756064 (W.D.N.C. Oct. 5, 2012).

However, the Court need not answer the question of whether Level 3 reasoning conflicts with simple, routine, repetitive tasks and instructions because there is no conflict between simple, routine, repetitive tasks and instructions and Level 2 reasoning. Moore can still perform the jobs of hand packager and kitchen helper that the VE testified to during the hearing. Thus, substantial

evidence supports the ALJ's conclusion that Moore can perform other jobs in significant number in the national economy.

**B. The additional evidence submitted to the AC does not render the ALJ's decision unsupported by substantial evidence.**

Next, Moore argues that the AC erred by not remanding the case to the Commissioner based on new evidence he submitted, citing to *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), for support. Moore submitted to the AC a questionnaire completed by Dr. Kathleen Dunlap, who treated Moore from November 15, 2017 until June 28, 2018. (Doc. No. 9-1, at 10). These forms indicate several limitations, including that Moore was markedly impaired in understanding short and simple instructions and in activities of daily living, as well as marked difficulty in maintaining social functioning. Moore contends that this "new and material" evidence contradicts the ALJ's decision and therefore the case should be remanded to the ALJ to consider this new evidence.

The Commissioner argues that the AC's rationale in denying review is not a justiciable issue and that the new evidence does not warrant court remand. He points to two reasons why Dr. Dunlap's opinion would not create a reasonable probability that it would have changed the outcome. First, Defendant points out that it is unclear whether Dr. Dunlap's assessment is material to the period in question, writing:

> Although Dr. Dunlop [sic] first saw [Moore] in November 2017, some 4 months before the ALJ's decision, she did not complete her medical assessment until July 2019, some 16 months after the ALJ's decision. It is not clear if her opinion is based upon treatment records prior to the ALJ's decision. Her treatment records do not appear. This Court reviews the issue of disability as of the date of the ALJ's decision, not as of the date of Dr. Dunlop's opinion (Tr. 9-21). Therefore, this evidence may not be material to the time period under review.

(Doc. No. 11, at 12-13). Additionally, the Commissioner argues that Dr. Dunlap's opinion is merely a "check and circle the box" preprinted form that lacks any individualized narrative

explanation and that State agency medical consultant opinions support the ALJ's findings. *Id.* at 13.

The AC will review a case if, among other things, it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). "Evidence is new within the meaning of this section if it is not duplicative or cumulative." *Wilkins v. Secretary, Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

The Social Security regulations require only that the AC consider the new and material evidence in deciding whether to grant review, and, if it chooses not to grant review, there is no express requirement that the AC explain its rationale for denying review. *Meyer*, 662 F.3d at 705-06. When the AC receives additional evidence and denies review, the issue for the court is whether the Commissioner's final decision is supported by substantial evidence and reached through the application of the correct legal standard. *Id.* at 704. In making this determination, the court reviews the record as a whole, including any new evidence that the AC considered. *Id.; see also Wilkins*, 953 F.2d at 96.

With regards to the new evidence submitted by Moore, the AC found that the "evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). This Court agrees with the AC and finds that substantial evidence supports the ALJ's decision. First, the additional evidence submitted by Moore is a check-the-box form with no narrative explanation or citation to relevant medical evidence. *See Shannon v. Berryhill*, No. 1:17-cv-00066-RJC, 2018 WL 1567368, at *4 (W.D.N.C. Mar. 30, 2018) ("[T]he Court first recognizes that check-box or fill-in-the-blank forms 'are entitled to little weight because they are not supported by

objective evidence in the record as required under 20 C.F.R. §§ 404.1527, 416.927.'" (quoting *Michaels v. Colvin*, No. 3:15CV388-RJC-DSC, 2016 WL 8710975, at *5 (W.D.N.C. Mar. 25, 2016), *adopted by* No. 315CV00388RJCDSC, 2016 WL 5478014 (W.D.N.C. Sept. 26, 2016), *aff'd sub nom Michaels v. Berryhill*, 697 Fed. Appx. 223 (4th Cir. 2017)). Second, there are no accompanying treatment notes by Dr. Dunlap in the record that would support her conclusions. This evidence is considerably different from the additional evidence in *Meyer*, which consisted of an opinion letter by the claimant's treating doctor and was supported by a detailed narrative explanation. *Meyer*, 662 F.3d at 703-04. Accepting Moore's argument would mean that every time a claimant submits new, contradictory evidence at the AC level (which, new evidence often disputes the ALJ's decision in some way or there is no point in submitting it), the case should be remanded to the ALJ to consider the new evidence. This is not the rule, nor is it what the *Meyer* case stands for. The new evidence must do more than just contradict the ALJ's decision, it must render the ALJ's opinion unsupported by substantial evidence or make a reviewing court unable to determine if substantial evidence supports the denial of benefits. *See Meyer*, 662 F.3d at 707. Because there is no supporting evidence by way of explanation or treating notes to determine if Dr. Dunlap's opinion is well supported by the evidence, the Court does not find that this new evidence is enough to upset the ALJ's opinion. The Court finds that, even considering Dr. Dunlap's assessment, the ALJ's opinion is supported by substantial evidence.

## IV. CONCLUSION

The decision of the ALJ, therefore, is hereby **AFFIRMED**, Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **DENIED**, and Defendant's Motion for Summary Judgment (Doc. No. 10) is **GRANTED.**

**SO ORDERED.**

9

Signed: January 8, 2020

Kenneth D. Bell
United States District Judge